Ronald E. BELDING, Jr. and Antoinette Belding, Plaintiffs-Appellants,

v.

Deeanna L. DeMOULIN, Defendant,

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Respondent.†

Court of Appeals

*No. 2012AP829. Submitted on briefs November 20, 2012. —Decided January 16, 2013.*

2013 WI App 26

(Also reported in 828 N.W.2d 890.)

† Petition for Review granted 5-10-13.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Gregory A. Pitts* of *Schoone, Leuck, Kelley, Pitts & Knurr, S.C.*, Racine.

On behalf of the defendant-respondent, the cause was submitted on the briefs of *Claude J. Covelli* of *Boardman & Clark LLP*, Madison.

161

A nonparty briefwas filed by *Jesse B. Blocher* and *Robert L. Jaskulski* of *Habush Habush & Rottier S.C.* of Waukesha, for Wisconsin Association for Justice.

Before Brown, C.J., Neubauer, P.J., and Gundrum, J.

¶ 1. NEUBAUER, P.J. This insurance coverage dispute requires us to determine whether auto insurance policies could prohibit "stacking"—i.e., adding together—coverage limits for uninsured motorist ("UM") coverage under multiple policies owned by the same insured, during a two-year period when both Wis. Stat. §§ 632.32(5)(j) (2009–10)[1] (authorizing certain "drive other car" exclusions) and 632.32(6)(d) (prohibiting antistacking provisions in UM coverage) were in force. We conclude that under those provisions, "drive other car" exclusions could not prevent stacking of UM coverage limits for up to three vehicles owned by the same insured. We reverse and remand.

## BACKGROUND

¶ 2. The material undisputed facts are as follows. In fall 2009, the plaintiffs, Ronald E. and Antoinette Belding, renewed their car insurance policies with State Farm Mutual Automobile Insurance Company. Each policy insured one of the Beldings' vehicles, a Ford Ranger and a Mercury Villager, against liability for accidents occurring in the six months following renewal. Each policy premium included a separate amount for UM coverage. The basic UM insuring agreement in each policy was as follows:

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

> *We* will pay compensatory damages for *bodily injury* an *insured* is legally entitled to recover from the owner or driver of an *uninsured motor vehicle*. The *bodily injury* must be:
>
> 1. sustained by an *insured*; and
>
> 2. caused by an accident that involves . . . an *uninsured motor vehicle* . . . .

However, various exclusions and limitations applied to UM coverage in both policies, as discussed in more detail below.

¶ 3. The present dispute between the Beldings and State Farm concerns UM coverage for an accident that happened in January 2010. Ronald Belding was driving the Ford Ranger in Kenosha when he was struck by an uninsured vehicle driven by a drunk driver[2] and suffered serious, permanent bodily injuries. Under the Ranger policy, State Farm paid out $100,000, the per-person limit for UM coverage. The Beldings, having suffered more than $100,000 in losses, invoked the UM coverage under the Villager policy, seeking to stack it with the Ranger policy coverage.

¶ 4. State Farm denied coverage under the Villager policy per its UM "drive other car" exclusion, which states there is no coverage

> FOR AN *INSURED* WHO SUSTAINS *BODILY IN-JURY* RESULTING FROM THE USE OF A MOTOR VEHICLE *OWNED BY YOU* OR ANY *RESIDENT RELATIVE* IF IT IS NOT *YOUR CAR*, A *NEWLY ACQUIRED CAR*, OR A *TEMPORARY SUBSTI-TUTE CAR* . . . .

---

[2] The defendant driver, Deanna L. DeMoulin, has offered no argument in this action or on appeal. State Farm's cross-claim against DeMoulin was dismissed, but the Beldings' claim against DeMoulin survived the judgment from which the Beldings have taken this appeal.

**"INSURED"** means the named insured and his or her resident spouse, resident relatives or any other person occupying the insured's car. **"YOUR CAR"** means the vehicle listed on the declarations page of the policy. The Beldings argued that the "drive other car" exclusion was invalidated by the following statute, effective November 1, 2009:

> *No policy may provide that,* regardless of the number of policies involved, vehicles involved, persons covered, claims made, vehicles or premiums shown on the policy, or premiums paid, *the limits for any uninsured motorist coverage . . . under the policy may not be added to the limits for similar coverage* applying to other motor vehicles to determine the limit of insurance coverage available for bodily injury . . . suffered by a person in any one accident, *except that a policy may limit the number of motor vehicles for which the limits of coverage may be added to 3 vehicles.*

WIS. STAT. § 632.32(6)(d) (emphasis added). State Farm responded that nonetheless the "drive other car" exclusion was expressly validated by retention of § 632.32(5)(j) in the final enactment of the 2009 legislation.

¶ 5. The circuit court granted summary judgment to State Farm having determined that no UM coverage existed under the Villager policy based on the "drive other car" exclusion. The Beldings appeal.

## DISCUSSION

¶ 6. This case requires us to review a circuit court's grant of summary judgment pursuant to an insurance contract and relevant statutes. A circuit court is to grant summary judgment if the record makes

clear "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2); *Teschendorf v. State Farm Ins. Cos.*, 2006 WI 89, ¶ 9, 293 Wis. 2d 123, 717 N.W.2d 258. Here, the facts are undisputed. The interpretation of statutes is subject to our de novo review. *Teschendorf*, 293 Wis. 2d 123, ¶ 9. In statutory interpretation, the language itself is the first and best source for understanding a provision. *Hubbard v. Messer*, 2003 WI 145, ¶¶ 9–10, 267 Wis. 2d 92, 673 N.W.2d 676. Statutory provisions also cannot be read in isolation but must "be looked at so as not to render any portion of the statute superfluous . . . . [and so as] to avoid an unreasonable or absurd interpretation." *Id.*, ¶ 9.

¶ 7. The ability to stack UM coverage has been the frequent subject of legislation and litigation in Wisconsin since the mid-1960s, and a brief summary of that history is necessary here. UM insurance protects drivers against the possibility that a driver who has no liability insurance will cause damages that he or she cannot pay for. *See Blazekovic v. City of Milwaukee*, 2000 WI 41, ¶ 11, 234 Wis. 2d 587, 610 N.W.2d 467. Because some insureds own multiple vehicles and purchase separate UM coverages when they insure each one, issues have arisen as to whether insureds may invoke multiple UM coverages for a single accident.

¶ 8. To prevent such cumulating of coverage limits, insurers developed "antistacking" provisions, which provide that such UM coverage limits cannot be added together. Early on, some insureds tried to challenge those antistacking clauses as against public policy, but Wisconsin courts rejected such challenges and upheld

UM antistacking provisions until the late 1970s. *See Nelson v. Employers Mut. Cas. Co.*, 63 Wis. 2d 558, 563 & nn.2–4, 217 N.W.2d 670 (1974), *superseded by statute as stated in Nicholson v. Home Ins. Cos.*, 137 Wis. 2d 581, 597–98, 405 N.W.2d. 327 (1987). In the 1980s the situation changed because of 1975 and 1979 legislation that prohibited many kinds of antistacking clauses. 1975 Wis. Laws, ch. 375, subch. III and 1979 Wis. Laws, ch. 102, § 171; *see also*, Wis. Stat. § 631.43 (providing, with certain exceptions, "no 'other insurance' provisions of the policy may reduce the aggregate protection of the insured" below the amount of the total loss or the amount of the aggregated limits of all applicable provisions); *Nicholson*, 137 Wis. 2d at 596–98, *superseded by statute as stated in Teschendorf*, 293 Wis. 2d 123, ¶ 49. Per these legislative mandates, Wisconsin courts prohibited almost all clauses that sought to prevent the stacking of UM coverage. *See Blazekovic*, 234 Wis. 2d 587, ¶ 19 ("Prior to 1995, a long line of cases held invalid [UM] exclusions that served to prohibit the stacking of claims.").

¶ 9. For instance, the prohibition against antistacking clauses was held to bar a "drive other car" exclusion to the extent it would have "exclud[ed] coverage for accidents involving motor vehicles owned by the insured but not included in the policy." *Welch v. State Farm Mut. Auto. Ins. Co.*, 122 Wis. 2d 172, 176, 361 N.W.2d 680 (1985), *superseded by statute as stated in Teschendorf*, 293 Wis. 2d 123, ¶ 25. Specifically, the exclusion was invalid to the extent it attempted to prevent stacking of UM coverage limits, because of the prohibition against "other insurance" provisions that sought to "reduce the aggregate protection of the insured below the lesser of the actual insured loss . . . or

166

the total indemnification promised by the policies." Wɪs. Sᴛᴀᴛ. § 631.43(1); *see Welch*, 122 Wis. 2d at 178.

¶ 10. The legislature changed the law in 1995. Particularly relevant is the enactment of Wɪs. Sᴛᴀᴛ. § 632.32(5)(j), which authorized the exact sort of "drive other car" exclusion that was invalidated in *Welch*. The legislature also clarified that Wɪs. Sᴛᴀᴛ. § 631.43(1), the general "other insurance" provision, did not affect the rights of insurers to exclude, limit, or reduce coverage under § 632.32(5)(j). Sec. 631.43(3). Paragraph (5)(j), which has remained in force continuously since its 1995 enactment, provides as follows:

> (j) *A policy may provide that any coverage under the policy does not apply to a loss resulting from the use of a motor vehicle that* meets all of the following conditions:
>
> 1. **Is owned by the named insured**, or is owned by the named insured's spouse or a relative of the named insured if the spouse or relative resides in the same household as the named insured.
>
> 2. **Is not described in the policy** under which the claim is made.
>
> 3. **Is not** covered under the terms of the policy as **a newly acquired or replacement motor vehicle**. (Emphasis added.)

¶ 11. The law in dispute here took effect in 2009. The 2009 legislature passed legislation that mandated UM coverage "in limits of at least $100,000 per person and $300,000 per accident." 2009 Wis. Act 28, § 3159.[3] The same legislation also prohibited antistacking

_____

[3] The legislature defined "uninsured motorist coverage" as "coverage for the protection of persons insured under that coverage who are legally entitled to recover damages for bodily

clauses in UM coverage. 2009 Wis. Act 28, § 3168 (renumbering the former Wis. § 632.32(5)(f) as § 632.32(6)(d) and amending it to prohibit antistacking clauses instead of authorizing them). This prohibition on UM antistacking clauses was short lived, repealed just two years later. 2011 Wis. Act 14, § 23.

¶ 12. The 2009 legislature also sought to repeal Wis. Stat. § 632.32(5)(j), which specifically allowed a "drive other car" exclusion. 2009 Wis. Act. 28, § 3172. *See* Governor James Doyle Veto Message on 2009 Wisconsin Act 28, at 39 (June 29, 2009) (explaining veto of section 3172 of the act, which would have repealed paragraph (5)(j), and retention of "separate provisions," including section 3168). Thus, for the period of 2009–11, both § 632.32(5)(j), authorizing "drive other car" exclusions, and § 632.32(6)(d), prohibiting antistacking clauses in UM coverage, were in effect at the same time.

¶ 13. Both parties agree that the Villager policy is governed by the short-lived 2009 law. It is also undisputed that in response to the 2009 legislation, State Farm changed certain provisions of the Villager policy via an "amendatory endorsement," Endorsement 6949B. Endorsement 6949B left the "drive other car" exclusion almost unchanged, and it also permitted stacking of UM limits for up to three insured vehicles.[4]

---

injury, death, sickness, or disease from owners or operators of uninsured motor vehicles." Wis. Stat. § 632.32(2)(f).

[4] The pertinent part of the endorsement states as follows:

> d. **If Other Uninsured Motor Vehicle Coverage Applies**
>
> This provision is changed to read:
>
> 1. If Uninsured Motor Vehicle Coverage provided by this policy and:

¶ 14. The Beldings argue that the 2009 law, which prohibits antistacking provisions in UM coverage, prevents the "drive other car" exclusion in the Villager policy from barring stacking of UM coverage. We agree.

¶ 15. The legislature has imposed a two-part test for the validity of exclusions under WIS. STAT. § 632.32(5)(e), which states that "[a] policy may provide for exclusions not prohibited by sub. (6) or other applicable law." *See Clark v. American Family Mut. Ins. Co.*, 218 Wis. 2d 169, 174, 577 N.W.2d 790 (1998). First, if a prohibition enumerated under § 632.32(6) applies, then the exclusion is barred. *See Clark*, 218 Wis. 2d at 174. Second, if no enumerated prohibition applies, we consider whether any other law bars the exclusion. *See id.* If neither § 632.32(6) nor "other applicable law" bars the exclusion, it is permissible. *See id.*

¶ 16. Pursuant to the directive of WIS. STAT. § 632.32(5)(e), because § 632.32(6)(d) prohibited antistacking of multiple UM coverages, the "drive other car" policy exclusion otherwise permitted under § 632.32(5)(j) is barred. Specifically, § 632.32(6)(d) prohibited *any policy provision* that prevented the adding together of UM coverage limits under multiple UM

a. if uninsured motor vehicle coverage provided by one or more other sources also apply to the same accident, then the maximum amount that may be paid from all sources combined is the sum of the highest applicable limits corresponding to the three uninsured motor vehicle coverages providing those highest applicable limits; and

b. if one or more other vehicle policies issued to you or any resident relative by the State Farm Companies apply to the same bodily injury, then we may choose one or more of those vehicle policies from which to make payment.

coverages "regardless of the number of policies involved, vehicles involved, persons covered, claims made, vehicles or premiums shown on the policy, or premiums paid." Thus, as required by § 632.32(5)(e), neither the "drive other car" exclusion nor any other exclusion could stop the Beldings from adding together separate UM coverages they had purchased for their own vehicles.

¶ 17. State Farm's claim that the "drive other car" exclusion controls disregards the admonition in Wis. STAT. § 632.32(6)(d) that "[n]o policy may provide that the limits for any uninsured motorist coverage ... under the policy may not be added to the limits for similar coverage" regardless of the number of policies involved or vehicles shown on the policy. More fundamentally, State Farm's interpretation wholly ignores 632.32(5)(e), which was enacted in 1975 and left in force by the 1995 amendments, and has continuously directed that *only exclusions not prohibited by subsection (6) or other applicable law are enforceable.*

¶ 18. Our interpretation gives effect to all the applicable provisions under the statutory scheme. Per the directive of Wis. STAT. § 632.32(5)(e), paragraph (6)(d) applies during its effective period whenever a policy provision would prevent stacking of UM coverages for which an insured paid. However, where there are no multiple coverage limits to stack, so that paragraph (6)(d) would not apply at all, an exclusion under § 632.32(5)(j) would be permitted. Section 632.32(5)(j) thus would apply in those situations for which "drive other car" exclusions were originally conceived: preventing an insured who owns multiple vehicles from obtaining coverage for a vehicle that he or she did not *insure at all.* In other words, § 632.32(5)(j) still permits clauses that prevent an insured from invoking UM free

170

rider coverage for accidents resulting from the insured's use of a vehicle that the insured or a related member of the household owned, but chose not to insure at all. *See Westphal v. Farmers Ins. Exch.*, 2003 WI App 170, ¶ 11, 266 Wis. 2d 569, 669 N.W.2d 166 (purpose of the drive other cars exclusion is to exclude coverage for a vehicle that the insured owns or frequently uses for which no premium has been paid); ARNOLD P. ANDERSON, WISCONSIN INSURANCE LAW, 3.72 (6th ed. 2010). The statutory scheme allows each provision to take effect when applicable.

■

¶ 19. State Farm notes that the Governor not only vetoed the repeal of WIS. STAT. § 632.32(5)(j) but also left a cross-reference to paragraph (5)(j) in WIS. STAT. § 631.43(3), which addresses "other insurance" provisions. *See* § 631.43(3). "[W]here a general statute and a specific statute apply to the same subject, the specific statute controls." *Rouse v. Theda Clark Med. Ctr., Inc.*, 2007 WI 87, ¶ 37, 302 Wis. 2d 358, 735 N.W.2d 30. In the dispute at hand, the result flows from the specific directive of § 632.32(5)(e), which mandates that in motor vehicle policies, exclusions forbidden by § 632.32(6) are prohibited, as well as the mandate of § 632.32(6)(d), that provisions may not bar UM stacking for up to three policies. In short, the fact that "drive other car" exclusions remain an exception to the general "other insurance" provision for all motor vehicle policies does not trump the specific prohibition on antistacking in UM coverage in the 2009 law.

¶ 20. Our reading is confirmed by the Governor's related veto message. Governor Doyle's message was as follows:

Section 3172 [would have repealed WIS. STAT. § 632.32(5)(j) and reenacted it as a prohibition barring]

insurers from denying coverage for an accident if the vehicle is not described in the policy under which a claim is made. I am vetoing this provision and cross references to this section under [other portions of the act], because it may increase the cost of premiums, but I am retaining separate provisions . . . that allow the stacking of coverage limits for up to three vehicles owned by the insured.

Governor James Doyle Veto Message on 2009 Wisconsin Act 28, at 39 (June 29, 2009). Thus, despite his veto leaving § 632.32(5)(j) in place, his decision to leave intact the new UM antistacking law, § 632.32(6)(d), would "allow the stacking of coverage limits for up to three vehicles owned by the insured."

¶ 21. In conclusion, the law in place from November 1, 2009, until November 1, 2011, is that "drive other car" exclusions during that period could not prevent insureds from stacking together their UM coverage limits for up to three vehicles owned and insured by the same insured. Reversed and cause remanded.

*By the Court.*—Judgment reversed and cause remanded.