Joseph C. WESTRA, Plaintiff-Appellant,

v.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY,
Defendant-Respondent.

Court of Appeals

*No. 2013AP48. Submitted on briefs May 28, 2013.
—Decided June 18, 2013.*

2013 WI App 93

(Also reported in 835 N.W.2d 280.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *C.M. Bye* and *Martha H. Heidt* of *Bye, Goff & Rohde, Ltd.,* River Falls.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Claude J. Covelli of Boardman & Clark, LLP,* Madison.

Before Hoover, P.J., Mangerson and Stark, JJ.

¶ 1. STARK, J. This case involves a dispute be-

tween Joseph Westra and his automobile insurer, State Farm Mutual Automobile Insurance Company, over the stacking, or adding together, of underinsured motorist coverage limits. Specifically, we must determine whether a provision in Westra's insurance policies that limited the stacking of underinsured motorist coverage to the coverage limits for three vehicles was permissible under Wisconsin law on July 7, 2011, the date of the underlying accident.

¶ 2. WISCONSIN STAT. § 631.43(1) generally prohibits insurance policies from including anti-stacking provisions.[1] In contrast, WIS. STAT. § 632.32(6)(d), which was in effect from November 2009 until November 2011 and applied specifically to underinsured motorist coverage, allowed insurers to "limit the number of motor vehicles for which coverage limits may be added to 3 vehicles." The circuit court determined these statutes were irreconcilable. It therefore applied the more specific statute, § 632.32(6)(d), and concluded the anti-stacking provision in State Farm's policies was permissible at the time of the accident. As a result, the court concluded that Westra, who had already recovered the underinsured motorist coverage limits for three vehicles, was barred from recovering the coverage limits for two additional vehicles that were insured by State Farm. We agree with the circuit court's reasoning. We therefore affirm the summary judgment in State Farm's favor.

## BACKGROUND

¶ 3. The facts are undisputed. Westra was injured when a motorcycle he was driving collided with a vehicle driven by Andrew Kerrigan. After the accident,

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

Westra recovered insurance proceeds under four separate policies. First, he recovered the $150,000 limit of Kerrigan's automobile liability policy, which was issued by American Family Mutual Automobile Insurance Company. Second, he recovered the $100,000 underinsured motorist limit of a policy that Acuity, a Mutual Company, issued to the owner of the motorcycle he was driving. Third, Westra recovered the $100,000 underinsured motorist limit and the $10,000 medical payments limit of an Acuity policy on a pickup truck he owned. Fourth, Westra recovered the $100,000 underinsured motorist limit and the $10,000 medical payments limit of a State Farm policy issued to him on a 2003 Harley-Davidson motorcycle. In total, Westra recovered $470,000 in insurance proceeds.

¶ 4. Westra also sought to recover the underinsured motorist limits of two additional State Farm policies, which were issued to him on a 2000 Chevrolet pickup truck and a 1999 Harley-Davidson motorcycle. Each of those policies provided for $100,000 in underinsured motorist coverage. State Farm denied coverage under both policies, based on the following anti-stacking provision:

1. If Underinsured Motor Vehicle Coverage provided by this policy and:

 a. if underinsured motor vehicle coverage provided by one or more other sources also apply to the same accident, then the maximum amount that may be paid from all sources combined is the sum of the highest applicable limits corresponding to the three underinsured motor vehicle coverages providing those highest applicable limits; and

 b. if one or more other vehicle policies issued to *you* or any *resident relative* by the *State Farm Companies*

413

apply to the same *bodily injury*, then *we* may choose one or more of those vehicle policies from which to make payment.

¶ 5. Westra then filed the instant lawsuit against State Farm, seeking $200,000 in underinsured motorist coverage. State Farm moved for summary judgment. The parties stipulated Westra had suffered bodily injury damages that would entitle him to recover at least $200,000 in additional underinsured motorist coverage. They also agreed that the anti-stacking provision in State Farm's two remaining policies unambiguously barred Westra from recovering those policies' underinsured motorist limits because he had already received payment under three underinsured motorist coverages with equal or greater limits. The disputed issue was whether the anti-stacking provision was permissible under WIS. STAT. §§ 631.43(1) and 632.32(6)(d).

¶ 6. WISCONSIN STAT. § 631.43(1) generally prohibits anti-stacking provisions in insurance policies, stating:

When 2 or more policies promise to indemnify an insured against the same loss, no "other insurance" provisions of the policy may reduce the aggregate protection of the insured below the lesser of the actual insured loss suffered by the insured or the total indemnification promised by the policies if there were no "other insurance" provisions. The policies may by their terms define the extent to which each is primary and each excess, but if the policies contain inconsistent terms on that point, the insurers shall be jointly and severally liable to the insured on any coverage where the terms are inconsistent, each to the full amount of coverage it provided. Settlement among the insurers shall not alter any rights of the insured.

414

However, Wis. Stat. § 632.32(6)(d), which applies specifically to uninsured and underinsured motorist coverages, states:

> No policy may provide that, regardless of the number of policies involved, vehicles involved, persons covered, claims made, vehicles or premiums shown on the policy, or premiums paid, the limits for any uninsured motorist coverage or underinsured motorist coverage under the policy may not be added to the limits for similar coverage applying to other motor vehicles to determine the limit of insurance coverage available for bodily injury or death suffered by a person in any one accident, *except that a policy may limit the number of motor vehicles for which the limits for coverage may be added to three vehicles.*

(Emphasis added.)

¶ 7. The circuit court concluded Wis. Stat. §§ 631.43(1) and 632.32(6)(d) were irreconcilable because the former prohibited anti-stacking provisions in all insurance policies, but the latter allowed insurers to limit the stacking of underinsured motorist coverage to the coverage limits for three vehicles. Because the statutes could not be harmonized, the court decided the more specific statute, § 632.32(6)(d), should govern. The court further concluded the plain language of § 632.32(6)(d) unambiguously permitted the anti-stacking provision in State Farm's policies. The court therefore granted summary judgment in favor of State Farm, and Westra appeals.

## DISCUSSION

¶ 8. We review a grant of summary judgment independently, using the same methodology as the circuit court. *Hardy v. Hoefferle*, 2007 WI App 264, ¶ 6, 306 Wis. 2d 513, 743 N.W.2d 843. Summary judgment is

appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. WIS. STAT. § 802.08(2). Here, the facts are undisputed, leaving only an issue of law for our review.

¶ 9. Statutory interpretation, which includes interpreting the interaction between two statutes, presents a question of law that we review independently. *Courtyard Condo. Ass'n v. Draper*, 2001 WI App 115, ¶¶ 5–6, 244 Wis. 2d 153, 629 N.W.2d 38. Statutory interpretation begins with the language of the statute. *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. If the statute is unambiguous on its face, we simply apply the statutory language as written. *Id.* If the statutory language is ambiguous—that is, subject to more than one reasonable interpretation—we look to extrinsic sources to ascertain the legislature's intent. *Id.*, ¶¶ 47, 50. A statute that appears unambiguous on its face may be made ambiguous by its interaction with other statutes. *Courtyard Condo. Ass'n*, 244 Wis. 2d 153, ¶ 6.

■■

¶ 10. When statutes on the same subject matter appear to conflict, we have a duty to construe the statutes "in a manner that harmonizes them in order to give each full force and effect." *State v. Jeremiah C.*, 2003 WI App 40, ¶ 17, 260 Wis. 2d 359, 659 N.W.2d 193; *see also State v. Black*, 188 Wis. 2d 639, 645, 526 N.W.2d 132 (1994) (When interpreting similar statutory provisions, a court must "make every attempt to give effect to both by construing them together so as to be consistent with one another[.]"). However, if conflicting statutes on the same subject matter cannot be reconciled, the more specific statute controls. *See Clean Wis., Inc. v. Public Serv. Comm'n*, 2005 WI 93, ¶ 175, 282 Wis. 2d 250, 700 N.W.2d 768. "[T]his is especially true where the

specific statute is enacted after the general statute." *Martineau v. State Conservation Comm'n*, 46 Wis. 2d 443, 449, 175 N.W.2d 206 (1970).

¶ 11. The circuit court concluded WIS. STAT. §§ 631.43(1) and 632.32(6)(d) were irreconcilable, and it was therefore impossible to give each statute its full force and effect. We agree. Section 631.43(1) provides that, if two or more policies promise to indemnify an insured against the same loss, "no 'other insurance' provisions of the policy may reduce the aggregate protection of the insured below the lesser of the actual insured loss suffered by the insured or the total indemnification promised by the policies if there were no 'other insurance' provisions." This language clearly and unambiguously precludes policy provisions that prevent an insured from aggregating coverages for a single loss.

¶ 12. Consistent with WIS. STAT. § 631.43(1), the first portion of WIS. STAT. § 632.32(6)(d) prohibits policies from providing that "the limits for any uninsured or underinsured motorist coverage under the policy may not be added to the limits for similar coverage applying to other motor vehicles to determine the limit of insurance coverage available for bodily injury or death suffered by a person in any one accident[.]" Like § 631.43(1), this language clearly prohibits anti-stacking provisions. However, § 632.32(6)(d) further provides that a policy "may limit the number of motor vehicles for which coverage limits may be added to 3 vehicles." Thus, read in its entirety, § 632.32(6)(d) requires insurers to allow stacking of underinsured motorist coverage limits, but it permits them to restrict stacking to the coverage limits for three vehicles.

¶ 13. The circuit court aptly explained the conflict between WIS. STAT. §§ 631.43(1) and 632.32(6)(d), stating:

417

[WISCONSIN] STAT. § 631.43(1) essentially prohibited anti-stacking provisions in motor vehicle insurance policies, while WIS. STAT. § 632.32(6)(d) served to allow such provisions with some restrictions. Such a conflict is irreconcilable because the statutes required stacking of insurance coverage without limit while simultaneously allowing provisions restricting the stacking of such coverage.

We agree with the circuit court's reasoning. In addition, we reject Westra's argument that the statutes can be harmonized.

¶ 14. Westra's attempt to harmonize WIS. STAT. §§ 631.43(1) and 632.32(6)(d) rests on the distinction between inter-policy and intra-policy stacking. Inter-policy stacking refers to the stacking of coverage under separate insurance policies covering different vehicles, regardless of whether the policies were issued by the same insurer. *See* ARNOLD P. ANDERSON, WISCONSIN INSURANCE LAW, § 3.59 (6th ed. 2010). Intra-policy refers to the stacking of coverage under a single policy that covers multiple vehicles, with a separate premium attributable to each vehicle. *See id.*, § 3.60.

¶ 15. Westra argues WIS. STAT. § 631.43(1) applies only to inter-policy stacking. He notes that, by its plain language, § 631.43(1) refers to situations in which "2 or more policies promise to indemnify an insured against the same loss." Thus, he argues the statute bans policy provisions that prohibit inter-policy stacking but allows provisions that prohibit intra-policy stacking. Turning to WIS. STAT. § 632.32(6)(d), Westra argues the first portion of the statute expressly prohibits all anti-stacking provisions for underinsured motorist coverage, whether inter-policy or intra-policy, but the second portion allows insurers to restrict intra-policy stacking to the coverage limits for three vehicles. Westra asserts

that, under this interpretation, the three-vehicle exception in § 632.32(6)(d) does not conflict with § 631.43(1)'s prohibition on anti-stacking provisions because the former applies only to intra-policy stacking and the latter applies only to inter-policy stacking.

¶ 16. Westra's attempt to reconcile Wɪs. Sтат. §§ 631.43(1) and 632.32(6)(d)fails for two reasons. First, as Westra concedes, our supreme court has concluded that § 631.43(1)'s prohibition on anti-stacking provisions applies to both inter- and intra-policy stacking. *See Carrington v. St. Paul Fire & Marine Ins. Co.*, 169 Wis. 2d 211, 224, 485 N.W.2d 267 (1992). Thus, even if we accepted Westra's argument that § 632.32(6)(d) allows insurers to restrict stacking of underinsured motorist coverage to three vehicles only in situations involving intra-policy stacking, the statute would still conflict with § 631.43(1).

¶ 17. Second, the plain language of Wɪs. Sтат. § 632.32(6)(d) does not support Westra's argument that the three-vehicle exception applies only to intra-policy stacking. The first portion of § 632.32(6)(d) specifically states,

> No policy may provide that, *regardless of the number of policies involved,* vehicles involved, persons covered, claims made, *vehicles or premiums shown on the policy,* or premiums paid, the limits for any . . . underinsured motorist coverage under the policy may not be added to the limits for similar coverage applying to other motor vehicles[.]

(Emphasis added.) Thus, the first portion of the statute requires that insurers allow stacking of underinsured motorist coverage both in situations involving multiple policies—i.e., inter-policy stacking—and in situations involving a single policy that covers multiple vehicles—

419

i.e., intra-policy stacking. The second portion of the statute then creates an exception to this rule, allowing a policy to "limit the number of motor vehicles for which the limits of coverage may be added to 3 vehicles." WIS. STAT. § 632.32(6)(d). The second portion of the statute does not distinguish between inter- and intra-policy stacking or suggest that the three-vehicle exception applies only when the insured attempts to stack multiple underinsured motorist coverages under a single policy. By its plain language, the three-vehicle exception applies to both inter- and intra-policy stacking.

■

¶ 18. Westra contends it would be "more reasonable" to read the three-vehicle exception in WIS. STAT. § 632.32(6)(d) as "a policy may limit the number of motor vehicles [insured under a single policy] for which limits of coverage may be added to three vehicles." (Bracketed language added by Westra.) However, Westra's proposed interpretation would require us to read language into the statute. Courts may not "add words to a statute to give it a certain meaning[,]" and we refuse to do so here. *See Fond du Lac Cnty. v. Town of Rosendale*, 149 Wis. 2d 326, 334, 440 N.W.2d 818 (Ct. App. 1989).

■

¶ 19. Westra also observes that WIS. STAT. § 632.32(6)(d) uses the singular term "policy" on three occasions, instead of the plural "policies." He then argues, without further elaboration, "Under the doctrine of *ejusdem generis*,[2] the [three-vehicle] exception applies to allow a single policy to limit the number

---

[2] The term *ejusdem generis* refers to "[a] canon of construction that when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same type as those listed." BLACK'S LAW DICTIONARY 556 (8th ed. 2004).

of motor vehicles that may be added *under a single policy* to just three vehicles." Westra's argument on this point is undeveloped. *See State v. Pettit*, 171 Wis. 2d 627, 646–47, 492 N.W.2d 633 (Ct. App. 1992) (court of appeals may disregard undeveloped arguments). Further, we fail to see how the legislature's use of the singular term "policy" when describing permitted provisions in an insurance policy shows an intent to restrict the three-vehicle exception in § 632.32(6)(d) to situations involving intra-policy stacking. If, as Westra contends, the legislature intended to limit the three-vehicle exception to vehicles insured under a single policy, it would have used the phrase "insured under a single policy." As written, § 632.32(6)(d) plainly and unambiguously allows insurers to restrict both inter- and intra-policy stacking of underinsured motorist coverage to three vehicles.

¶ 20. In a separate argument in his reply brief, Westra contends that WIS. STAT. § 632.32(6)(d) "expressly . . . precludes any insurance anti-stacking provision based on" the number of: (1) policies involved; (2) vehicles involved; (3) persons covered; (4) claims made; (5) vehicles or premiums shown on the policy, or premiums paid. He then argues that, under the doctrine of the last antecedent, the three-vehicle exception can only apply to the last item listed—vehicles or premiums shown on the policy, or premiums paid. Thus, he contends the three-vehicle exception applies only in situations where the insurer attempts to prevent stacking of underinsured motorist coverages for multiple vehicles insured under a single policy.

¶ 21. However, Westra concedes that, under the doctrine of the last antecedent, "qualifying words, phrases, and clauses[] are to be applied to the words or phrase *immediately proceeding* [sic]" them. Here, the

words "vehicles or premiums shown on the policy, or premiums paid" do not immediately precede the three-vehicle exception. Moreover, we reject Westra's assertion that the three-vehicle exception specifically modifies or qualifies any of the individual items listed above. Instead, the exception qualifies the general proposition set forth in the first portion of WIS. STAT. § 632.32(6)(d) that an insurer may not prevent its insured from stacking underinsured motorist coverage.

■

¶ 22. Westra further argues it is unreasonable to interpret WIS. STAT. § 632.32(6)(d) as applying to inter-policy stacking because the statute "says nothing about which policies would have priority." He contends that, without some rule as to which insurer's policy has priority, it will be "purely a matter of fortuity as to which insurer gets stuck with actually paying the [underinsured motorist] limits." Westra's argument fails because priority among insurers is a completely separate inquiry from the insured's ability to aggregate coverage, and neither has any effect on the other. Priority disputes are governed by policy provisions dictating when a particular policy provides primary coverage and when it provides excess coverage.[3] Westra's State Farm policies contain provisions addressing priority. Thus, the absence of priority rules in § 632.32(6)(d) does not mean the statute cannot apply to situations involving inter-policy stacking.

---

[3] *See* WIS. STAT. § 631.43(1) ("The policies may by their terms define the extent to which each is primary and each excess, but if the policies contain inconsistent terms on that point, the insurers shall be jointly and severally liable to the insured on any coverage where the terms are inconsistent[.]").

¶ 23. Westra nevertheless contends the legislative history of WIS. STAT. § 632.32(6)(d) shows that the legislature intended the three-vehicle exception to apply only to intra-policy stacking. However, legislative history cannot be used to create ambiguity in an otherwise unambiguous statute. *Kalal*, 271 Wis. 2d 633, ¶ 51. We have already concluded § 632.32(6)(d) unambiguously applies to both inter- and intra-policy stacking, so it is unnecessary to consult legislative history.

¶ 24. Further, the legislative history Westra cites does not mandate a conclusion that the three-vehicle exception in WIS. STAT. § 632.32(6)(d) applies only to intra-policy stacking. Westra relies on Governor James Doyle's Veto Message on 2009 Wis. Act 28, § 9, as quoted in *Belding v. DeMoulin*, 2013 WI App 26, 346 Wis. 2d 160, 828 N.W.2d 890, *review granted* (WI May 10, 2013) (No. 2012AP829). In the veto message, the governor explained he was vetoing a provision that would have repealed WIS. STAT. § 632.32(5)(j), which permitted the use of drive other car exclusions, but he was "retaining separate provisions . . . that allow the stacking of coverage limits for up to three vehicles *owned by the insured.*" *See Belding*, 346 Wis. 2d 160, ¶ 20 (emphasis added). Westra contends the governor's reference to vehicles "owned by the insured" shows that the legislature intended § 632.32(6)(d)'s three-vehicle limitation on stacking to apply only to intra-policy stacking. We disagree for two reasons.

¶ 25. First, that vehicles are "owned by the insured" does not necessarily mean they are insured under a single policy. An insured may own multiple vehicles that are insured under separate policies, as Westra did here. The veto message does not say anything about intra-policy stacking, nor does it state the

three-vehicle exception applies only when the three vehicles are insured under a single policy. Second, while the veto message states that Wɪs. Sᴛᴀᴛ. § 632.32(6)(d) allows stacking of underinsured motorist coverage limits for three vehicles owned by the insured, it does not state the statute applies *only* to vehicles owned by the insured. Merely stating that the statute permits stacking of coverage limits for vehicles owned by the insured does not mean the three-vehicle limit cannot be met by stacking coverage limits for vehicles owned by other parties.

¶ 26. Westra argues *Belding* conclusively established that the three-vehicle exception in Wɪs. Sᴛᴀᴛ. § 632.32(6)(d) applies only to vehicles owned by the same insured. However, Westra reads *Belding* too broadly. The *Belding* court was asked to determine whether a drive other car exclusion, which was explicitly authorized by Wɪs. Sᴛᴀᴛ. § 632.32(5)(j), could prevent the stacking of uninsured motorist coverage, even though § 632.32(6)(d) allowed uninsured motorist coverage to be stacked for up to three vehicles. *See Belding*, 346 Wis. 2d 160, ¶ 1. In addressing that issue, the court quoted the portion of Governor Doyle's veto message stating that § 632.32(6)(d) would "allow the stacking of coverage limits for up to three vehicles owned by the insured." *Belding*, 346 Wis. 2d 160, ¶ 20. The court ultimately concluded that, under the law that was in place from November 2009 to November 2011, drive other car exclusions "could not prevent insureds from stacking together their [uninsured motorist] coverage limits for up to three vehicles owned and insured by the same insured." *Id.*, ¶ 21. The court did not address the issue argued by Westra—that is, whether the three-vehicle limitation on stacking in § 632.32(6)(d) applies only when the insured attempts to stack coverage for

424

vehicles insured under a single policy. Thus, contrary to Westra's assertion, *Belding* does not control the dispositive issue in this case.

¶ 27. We have rejected Westra's argument that WIS. STAT. §§ 631.43(1) and 632.32(6)(d) can be harmonized. We must therefore apply the more specific statute to determine whether State Farm's anti-stacking provision was permissible at the time of the accident. *See Clean Wis.*, 282 Wis. 2d 250, ¶ 175. Section 631.43, which was enacted in 1975, applies broadly to all types of indemnity insurance. *See* 1975 Wis. Laws, ch. 375, § 17 note (differentiating § 631.43, which "appl[ies] to all indemnity insurance[,]" from its predecessor statute, which applied only to fire insurance). In contrast, § 632.32(6)(d), which was enacted in 2009, applies specifically to uninsured and underinsured motorist coverage. *See* 2009 Wis. Act 28, § 3168. Because § 632.32(6)(d) applies to a narrower class of insurance coverage than § 631.43(1), and because it specifically applies to the type of coverage at issue in this case, § 632.32(6)(d) is the more specific statute. In addition, § 632.32(6)(d) was enacted after § 631.43(1). *See Martineau,* 46 Wis. 2d at 449 (rule favoring application of specific statute over general statute is "especially true" where specific statute was enacted after general statute). We must therefore apply § 632.32(6)(d) to determine the validity of State Farm's anti-stacking provision.

¶ 28. We have already concluded that WIS. STAT. § 632.32(6)(d) plainly and unambiguously allows insurers to restrict both inter- and intra-policy stacking of underinsured motorist coverage to the coverage limits for three vehicles. The anti-stacking provision in State

Farm's policies does just that—it limits the insured to recovering "the sum of the highest applicable limits corresponding to the three underinsured motor vehicle coverages providing those highest applicable limits[.]" Thus, State Farm's anti-stacking provision is permissible under § 632.32(6)(d). Westra has already recovered the $100,000 underinsured motorist coverage limits for three vehicles. Consequently, the anti-stacking provision in his two remaining State Farm policies bars him from recovering an additional $200,000 in underinsured motorist coverage under those policies. The circuit court properly granted summary judgment in State Farm's favor.

¶ 29. In a final effort to avoid the application of Wis. Stat. § 632.32(6)(d), Westra argues that, under the facts of this case, State Farm's anti-stacking provision amounts to a prohibited exclusion. He cites *Progressive Northern Insurance Co. v. Hall*, 2006 WI 13, ¶ 28, 288 Wis. 2d 282, 709 N.W.2d 46, for the proposition that an exclusion "is a provision that eliminates coverage under a particular policy where, were it not for the exclusion, coverage would have existed under that policy." He argues that, under the circumstances of this case, the anti-stacking provision meets the definition of an exclusion because it completely eliminates underinsured motorist coverage under two of his State Farm policies. Westra then observes that, under Wis. Stat. § 632.32(5)(e) automobile insurance policies "may provide for exclusions not prohibited by [§ 632.32(6)] or other applicable law." He contends State Farm's anti-stacking provision fails both prongs of this two-part test because it is prohibited by § 632.32(6)(d) and also by Wis. Stat. § 631.43(1). He therefore argues the anti-stacking provision cannot be enforced under the facts of this case.

¶ 30. Even if Westra is correct that the anti-stacking provision operates as an exclusion under the circumstances of this case, we nevertheless conclude it is not a prohibited exclusion. First, while Westra contends the anti-stacking provision is prohibited by WIS. STAT. § 632.32(6)(d), we have already rejected his argument and concluded § 632.32(6)(d) unambiguously authorizes the provision. Second, although we agree with Westra that WIS. STAT. § 631.43(1) prohibits the anti-stacking provision, § 631.43(1) irreconcilably conflicts with § 632.32(6)(d). Section 632.32(6)(d) is the more specific statute, and we must therefore apply § 632.32(6)(d) instead of § 631.43(1). Because § 632.32(6)(d) expressly authorizes the anti-stacking provision, the anti-stacking provision is not a prohibited exclusion.

*By the Court.*—Judgment affirmed.