PLANNED PARENTHOOD OF WISCONSIN, INC.
and Fredrik Broekhuizen, M.D.,
Plaintiffs-Respondents,

v.

Brad D. SCHIMEL, Ismael Ozanne, James Barr,
Mary Jo Capodice, Greg Collins, Rodney A.
Erickson, Suresh K. Misra, Kenneth B. Simons,
Timothy Swan, Sridhar Vasudevan, Timothy W.
Westlake, Michael Phillips, Russell Yale,
Robert Zondag and Carol Ogland,
Defendants-Appellants,

Mitchell WILLIAMS, Intervenor.

Court of Appeals

*No. 2014AP2085. Submitted on briefs June 11, 2015.
—Decided February 24, 2016.*

2016 WI App 19

(Also reported in 877 N.W.2d 604.)

714

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Maria S. Lazar*, assistant attorney general, and *J.B. Van Hollen* and *Brad D. Schimel*, attorneys general.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Lester A. Pines* and *Susan M. Crawford* of *Cullen Weston Pines & Bach LLP*, Madison.

Before Neubauer, C.J., Reilly, P.J. and Gundrum, J.

¶ 1. GUNDRUM, J. Plaintiffs-Respondents Planned Parenthood of Wisconsin, Inc. (PPW) and Dr.

Fredrik Broekhuizen sought and received from the circuit court a summary and declaratory judgment interpreting newly enacted WIS. STAT. § 253.10 (2013–14),[1] related to voluntary consent for an abortion, and WIS. STAT. § 253.105, related to medication abortions. Defendants-Appellants—the state attorney general in his official capacity, the Dane county district attorney in his official capacity and as a representative of a class comprising all Wisconsin district attorneys, and members of the Wisconsin Medical Examining Board—appeal, contending Plaintiffs' entire action is nonjusticiable and therefore the court erred in granting judgment.[2] We agree with Defendants and reverse.

### Relevant Statutes

¶ 2. The following statutory provisions are of import to this appeal. Wisconsin's uniform declaratory judgments act, WIS. STAT. § 806.04, provides in relevant part:

> (1) SCOPE. Courts of record . . . shall have power to declare rights, status, and other legal relations . . . .

> (2) POWER TO CONSTRUE, ETC. Any person . . . whose rights, status or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status or other legal relations thereunder.

---

[1] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

[2] Hereinafter, we refer to Defendants-Appellants collectively as "Defendants" and to Plaintiffs-Respondents as "Plaintiffs." We will refer to individual parties by their particular names or official positions as necessary.

¶ 3. 2011 Wis. Act 217 (Apr. 20, 2012) created the following relevant statutory provisions. WISCONSIN STAT. § 253.105(2) states: "No person may give an abortion-inducing drug to a woman unless the physician who prescribed, or otherwise provided, the abortion-inducing drug for the woman . . . (b) [i]s physically present in the room when the drug is given to the woman." Subsections (3) and (4) provide for criminal and civil liability, respectively, for persons who violate subsec. (2), except that the pregnant woman herself is not subject to penalty. WISCONSIN STAT. § 253.10 provides:

> **(3)** . . . (a) *Generally.* An abortion may not be performed or induced unless the woman upon whom the abortion is to be performed or induced has . . . given voluntary and informed written consent under the requirements of this section.
>
> (b) *Voluntary consent.* Consent under this section to an abortion is voluntary only if the consent is given freely and without coercion by any person. The physician who is to perform or induce the abortion shall determine whether the woman's consent is, in fact, voluntary . . . . [T]he physician shall make the determination by speaking to the woman in person, out of the presence of anyone other than a person working for or with the physician . . . .

## Background

¶ 4. PPW provides abortion services, including services for medication abortions, at three PPW centers. Broekhuizen served as PPW medical director at the commencement of this action, performs and induces abortions, and provides services for medication abortions. According to the undisputed affidavit averments of PPW's then-director of abortion services, Amy

Doczy, PPW's protocol for medication abortions is as follows: A pregnant woman is prescribed two medications, Mifeprex[3] and misoprostol, both of which are provided to the woman in the presence of a physician at a PPW center. "The patient consumes the Mifeprex orally while at the center and is directed to self-administer the misoprostol buccally (dissolved between the cheek and gum) 24 hours later. Thus, the patient is not at the center and the physician is not physically present when the patient self-administers the misoprostol." A follow-up appointment is usually scheduled for approximately one to two weeks later to ensure the woman is no longer pregnant.

¶ 5. In 2012, the Wisconsin legislature passed 2011 Wis. Act 217, enacting the current language of WIS. STAT. §§ 253.105 and 253.10. Plaintiffs filed a lawsuit in federal court, challenging both new provisions as unconstitutionally vague. Plaintiffs' expressed concern in that suit, as here, is that the terms "give"/"given" in § 253.105(2) could be construed as meaning the second pill in PPW's protocol, misoprostol, is "given to the woman" when she actually administers that medication to herself, i.e., introduces it into her body buccally twenty-four hours after departing the clinic, in which case the physician would not be present and therefore would be potentially subject to liability. Plaintiffs' second expressed concern in the federal suit, as here, is that under the voluntary consent provision in § 253.10, a physician could be liable if a woman claims following an abortion that her consent to the abortion had not been voluntary, even if

---

[3] We capitalize "Mifeprex" because it is a trade name.

the physician had previously made a good faith determination under the statute that her consent was in fact voluntary.

¶ 6. Defendants and Plaintiffs entered into a stipulation in the federal action in which Defendants agreed that their interpretations of these provisions of 2011 Wis. Act 217 were consistent with Plaintiffs' desired interpretations—i.e., that "give"/"given" in Wis. Stat. § 253.105(2) relates to when the two pills are handed to the woman at the clinic, not when they actually are introduced into her body, and that, under Wis. Stat. § 253.10(3), a physician does not violate the voluntary consent provision so long as the physician makes a good faith determination that the woman is voluntarily consenting to the abortion. The parties indicated in the stipulation that the federal court "shall enter a judgment . . . binding all parties, including the class, and declaring that" the challenged provisions of Act 217 are to be interpreted in the manner desired by Plaintiffs. The court, however, declined to enter a proposed judgment incorporating the stipulation, and instead indicated its intent to proceed on Plaintiffs' motion for a preliminary injunction related to the statutory provisions. Based on the federal court's actions, Plaintiffs moved for dismissal of their lawsuit, and the court granted the motion.

¶ 7. Plaintiffs subsequently filed this state court action. According to their complaint, after passage of 2011 Wis. Act 217, PPW

> ceased offering abortion-inducing medication to medically eligible patients at all three clinics out of fear that [under Wis. Stat. § 253.105(2)] PPW and its medical providers would be exposed to potential criminal penalties, civil liability, and disciplinary

sanctions if they continued to provide the medications to patients in accordance with their established . . . protocols.

As to the voluntary consent provision in WIS. STAT. § 253.10(3), the complaint alleges this statute is ambiguous because it may, "but do[es] not on [its] face, provide that a physician's determination of voluntary consent . . . is governed by a 'good faith' standard." Plaintiffs allege "[t]he statute . . . appears to impose strict civil liability and civil forfeiture penalties on a physician who fails to correctly ascertain another person's subjective state of mind, regardless of the physician's good-faith attempt to ascertain that the patient's consent was in fact voluntary."

¶ 8. In the present action, Plaintiffs sought an injunction against Defendants and a declaratory judgment construing the two challenged provisions of 2011 Wis. Act 217 in the manner to which Defendants had agreed in the stipulation in the federal lawsuit. Defendants moved to dismiss this action on the ground that the complaint failed to state a claim upon which relief could be granted. The circuit court denied the motion. Plaintiffs subsequently moved for summary judgment, entry of a declaratory judgment, and a permanent injunction. The circuit court granted Plaintiffs' motion for summary and declaratory judgment, interpreting Act 217 in the manner Plaintiffs requested, but denied Plaintiffs' request for an injunction. Defendants appeal.[4] Additional facts are set forth as necessary.

---

[4] Plaintiffs do not challenge on appeal the circuit court's decision denying their request for a permanent injunction.

*Discussion*

¶ 9. Our review of a circuit court's decision on summary judgment is de novo. *Behrendt v. Gulf Underwriters Ins. Co.*, 2009 WI 71, ¶ 11, 318 Wis. 2d 622, 768 N.W.2d 568. Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* "The grant or denial of a declaratory judgment is addressed to the circuit court's discretion. However, when the exercise of such discretion turns upon a question of law, we review the question independently of the circuit court's determination." *Olson v. Farrar*, 2012 WI 3, ¶ 24, 338 Wis. 2d 215, 809 N.W.2d 1 (citation omitted). The interpretation of a statute is a matter of law we review de novo. *State v. Simmelink*, 2014 WI App 102, ¶ 5, 357 Wis. 2d 430, 855 N.W.2d 437.

¶ 10. A declaratory judgment is "fitting" when a controversy is justiciable. *Olson v. Town of Cottage Grove*, 2008 WI 51, ¶ 29, 309 Wis. 2d 365, 749 N.W.2d 211. A matter is justiciable if the following four factors are satisfied:

(1) The matter is a controversy in which a claim of right is asserted against one who has an interest in contesting it;

(2) The controversy is between persons whose interests are adverse;

(3) The party seeking declaratory relief has a legal interest in the controversy, that is to say a legally protectible interest; and

(4) The issue involved in the controversy is ripe for judicial determination.

*See id.*

*Medication Abortions*

¶ 11. As noted, WIS. STAT. § 253.105(2) states in relevant part: "No person may *give* an abortion-inducing drug to a woman unless the physician who prescribed, or otherwise provided, the abortion-inducing drug for the woman . . . (b) [i]s physically present in the room when the drug is *given* to the woman." (Emphasis added.) Plaintiffs' professed concern, as they state it on appeal, is that

> "given" could mean "dispensed" to the woman, i.e., when the drugs are transferred to the woman's possession. Alternatively, "given" could mean "administered," i.e., when the drugs are introduced into the woman's body by ingestion or other means.
>
> . . . Under their established protocol for medication abortions, the Plaintiffs were in compliance with the statute if the phrase "when the drug is given to the woman" means "when the drug is dispensed to the woman" or "when the drug is transferred to the woman's possession." However, if the phrase "when the drug is given to the woman" means "when the drug is administered," then a physician carrying out [PPW's] standard protocol arguably would violate the statute, because the physician is not physically present when the second drug, Misoprostol, is administered. Rather, under the protocol, the woman self-administers the Misoprostol by buccal absorption at home on the following day.

We agree with Defendants' contention on appeal that Plaintiffs' challenge to § 253.105 is not justiciable. We reach this conclusion based on Plaintiffs' failure to show how, under their undisputed standard protocol

722

for medication abortions, they possibly could be in violation of the statute under either of their suggested interpretations of "give"/"given."

¶ 12. "When the same term is used repeatedly in a single statutory section, it is a reasonable deduction that the legislature intended that the term possess an identical meaning each time it appears." *Coutts v. Wisconsin Ret. Bd.*, 209 Wis. 2d 655, 668–69, 562 N.W.2d 917 (1997); *see also General Castings Corp. v. Winstead*, 156 Wis. 2d 752, 759, 457 N.W.2d 557 (Ct. App. 1990):

> We reject an interpretation which ascribes different meanings to the same word as it variously appears in a statute unless the context clearly requires such an approach. This is all the more true where, as here, the word reappears *in the same sentence* of the statute at issue. Such an interpretation borders on the unreasonable. We must avoid such interpretations.

Thus, whichever meaning of "give"/"given" the legislature may have intended—transferring an abortion-inducing drug to a pregnant woman's possession or actually introducing the drug into the woman's body—we must conclude it intended the term to have the same meaning both times it is used in WIS. STAT. § 253.105(2).

¶ 13. As Plaintiffs state, and Defendants agree, if "give"/"given" means " 'dispensed' to the woman, i.e., when the drugs are transferred to the woman's possession," then based upon PPW's undisputed protocol in which both Mifeprex and misoprostol are transferred to the woman's possession at the clinic in the presence of the physician, the physician or other clinic personnel transferring the drug to the woman

would not be in violation of WIS. STAT. § 253.105(2). Significantly, however, Plaintiffs fail to explain how it is, based upon their protocol, that they reasonably could be found in violation of § 253.105(2) if "give"/"given" alternatively means "administered," i.e., "when the drugs are introduced into the woman's body by ingestion or other means." While it is undisputed the physician is not "present in the room" when the second drug, misoprostol, is introduced into the woman's body approximately twenty-four hours after the woman departs the clinic, the physician-presence requirement is only one of the elements that must be violated for potential liability. To be potentially liable under § 253.105(2), a physician or other clinic personnel must "give an abortion-inducing drug" to a woman —i.e., introduce the drug into her body, according to Plaintiffs' alternative meaning of "give"/"given." Plaintiffs do not even attempt to explain how it is a physician or other clinic personnel could violate this first element if "give"/"given" means "when the drugs are introduced into the woman's body" when Plaintiffs themselves state throughout the record and their appellate briefing that it is the woman herself, not a physician or other clinic personnel, who "self-administers" the misoprostol by introducing it into her own body approximately twenty-four hours after receiving the drug. Thus, Plaintiffs' action misses the mark with regard to at least the third justiciability factor, *see supra* ¶ 10, which is "often expressed in terms of standing," *see Lake Country Racquet & Athletic Club, Inc. v. Village of Hartland*, 2002 WI App 301, ¶ 15, 259 Wis. 2d 107, 655 N.W.2d 189, because they have failed to demonstrate that their undisputed protocol for medication abortions could place them in any potential jeopardy under either of

724

their proposed interpretations of "give"/"given."[5] *See id.*, ¶ 17 (plaintiff seeking declaratory judgment has burden to show risk of injury: "Here, Lake Country has failed to bring forth any facts demonstrating any pecuniary loss or the risk of any substantial injury to its interests.").

*Voluntary Consent*

■

¶ 14. Plaintiffs also sought a declaratory judgment with regard to Wis. Stat. § 253.10, arguing that a physician could be liable pursuant to § 253.10(3) if a woman claims following an abortion that her consent to the abortion had not been voluntary, even if the physician had previously made a good faith determination under the statute that her consent was in fact voluntary. In light of the record before us, we must agree with Defendants that Plaintiffs' action is also nonjusticiable with regard to § 253.10(3).

---

[5] As the Defendants point out, Affiliated Medical Services (Affiliated) also provides medication abortion services in Wisconsin. In an affidavit, Affiliated's director described the procedure Affiliated uses to perform medication abortions, which is nearly identical to the procedure used by Plaintiffs:

> Medical abortions as provided at Affiliated involve two medications administered 6 to 72 hours apart. Both medications are given to the patient by the physician at the same time. The patient takes the first medication at that time, with instructions to administer the second medication to herself later at home.

The director averred that she studied 2011 Wis. Act 217 "at or about the time of its adoption in order to determine what, if any, changes in Affiliated's procedures would be necessary to comply with Act 217." She concluded that Affiliated's procedure "is fully consistent with Act 217."

¶ 15. Arguing in their brief-in-chief that Plaintiffs lack standing, Defendants assert Plaintiffs' "conduct demonstrated their lack of any possible future injury," pointing out that "[a]fter [2011 Wis. Act 217] became effective, PPW did not cease performing surgical abortions" and "[n]o PPW physician changed his or her abortion practices."[6] Defendants quote deposition testimony of PPW's president and chief executive officer stating that PPW "could comply with that part of the law [regarding voluntary consents] as it was not unclear in a way that the give portion was." We would expect that in response Plaintiffs would point us to admissible record evidence demonstrating that Wis. Stat. § 253.10(3) actually has some detrimental effect on them or creates genuine fear that Plaintiffs may be subjected to detrimental effects based on the voluntary consent language. Instead, in their very brief response to Defendants' standing arguments, Plaintiffs fail to specifically and directly address the voluntary consent statute at all, making specific reference to the medication abortion statute but only the most implicit reference to the voluntary consent provision.[7] Plaintiffs state they have "as-

---

[6] This is in stark contrast to the fact that Plaintiffs ceased providing medication abortions following enactment of 2011 Wis. Act 217 out of a professed fear that they were at legal and professional risk as a result of Wis. Stat. § 253.105.

[7] Plaintiffs state they filed their declaratory judgment action "to ensure that they would not be subjected to felony prosecution under an overly-broad construction of the statutes at issue for delivering evidence-based professional services to their patients." The voluntary consent provision has no criminal penalty associated with it, and thus the "felony" reference can only be to the medication abortion provision. *See* Wis. Stat. §§ 253.10(5) & (6), 253.105. Further, "evidence-based professional services" is a phrase Plaintiffs consistently use through-

serted a sufficiently direct threat of personal detriment to give rise to standing for a declaratory judgment"; however, this is precisely what they have failed to show.

¶ 16. In a "Declaration" submitted by Plaintiffs in support of their motion for a preliminary injunction, Broekhuizen stated that in addition to performing surgical and medication abortions, as PPW medical director he oversaw "the provision of all medical care at all of PPW's centers, including the three centers at which abortions are provided." His oversight included "the development of medical protocols and procedures, supervision of all medical staff, etc." Of the forty-five numbered paragraphs in Broekhuizen's declaration, the vast majority relate to medication abortions, with only the final three paragraphs directly addressing the voluntary consent provision. While Broekhuizen declared in those three paragraphs that WIS. STAT. § 253.10(3)(b) is "unclear" to him, nowhere did he identify how the law actually harms him or PPW.

¶ 17. Dr. Kathy King took over for Broekhuizen as PPW medical director sometime before February 2014. In her deposition, King stated that following

out the record in reference to medication abortions. Plaintiffs only implicitly reference the voluntary consent issue, doing so in the following statements: "The Plaintiffs' interests in conducting their business without fearing criminal, civil or regulatory sanctions are legally protectable interests" and "the Plaintiffs are the ones against whom the [2011 Wis.] Act 217 provisions operate, exposing Plaintiffs to the threat of felony and civil penalties if they fail to comply with the statutory mandates." (Emphasis added.) Additionally, in their statement of facts, Plaintiffs provide only facts and references to medication abortions and nothing with regard to the voluntary consent issue.

enactment of 2011 Wis. Act 217, PPW suspended services of medication abortion due to the enactment of WIS. STAT. § 253.105; but when asked if any of her practices changed regarding voluntary consent following enactment of WIS. STAT. § 253.10(3) in Act 217, King stated: "No. I obtained the same voluntary consent as I had always." While she mentioned some general concerns of physicians, primarily as hearsay, regarding the voluntary consent law, when asked at the end of her deposition if she had "any fear of prosecution that a woman who did not, in fact, voluntarily consent to a surgical abortion could subject you to prosecution," King responded, "It's already a requirement on prior law that we obtain voluntary consent for surgical abortions. That has always been our standard of care and our practice and *I did not feel threatened.*" (Emphasis added.)

¶ 18. Defendants—the parties Plaintiffs sought to enjoin—have expressed in the stipulation in the federal district court action and in their briefing on appeal their clear belief that WIS. STAT. § 253.10(3) "will be" governed by a good faith standard, as Plaintiffs desire. Indeed, they have gone so far as to state in their motion to dismiss before the circuit court in this case that they "do not contest . . . the hypothetical position asserted by [P]laintiffs," and that 2011 Wis. Act 217 "could never be enforced in the way [Plaintiffs] suggest," i.e., without a good faith standard. (Parentheses omitted.) While Defendants' assurances alone do not make this matter nonjusticiable in that it is not at all clear that any, much less all, of them would be bound by these statements or the stipulation in the federal action, they do further highlight the lack of a showing by Plaintiffs that they are detrimentally affected by § 253.10(3). We recognize that Plaintiffs do not need to

await actual legal action or even a clearly expressed threat of legal action against them in order to have standing for a declaratory judgment. *See Doe v. Bolton*, 410 U.S. 179, 188 (1973); *Borden Co. v. McDowell*, 8 Wis. 2d 246, 256, 99 N.W.2d 146 (1959). Plaintiffs, however, do need to "bring forth . . . facts demonstrating . . . pecuniary loss or the risk of . . . substantial injury to [their] interests." *See Lake Country*, 259 Wis. 2d 107, ¶ 17. They have failed to do so. Relatedly, Plaintiffs do not identify and we have been unable to locate in the record a clear indication that they would conduct themselves in any different manner depending on a court's interpretation of the voluntary consent language; again, indicating they are not detrimentally affected by the "good faith" issue they raise.

¶ 19. To have standing, Plaintiffs need to demonstrate they actually "have a personal stake in the outcome and [are] directly affected by the issue[] in controversy." *Id.*, ¶ 15; *see also* Wis. Stat. § 806.04(2) (for a person to have determined a question regarding the construction or validity of a statute, his or her "rights, status or other legal relations" must be "affected" by the statute). They have failed to demonstrate this.

### Conclusion

¶ 20. Based on this record, a declaratory judgment is inappropriate with regard to Wis. Stat. §§ 253.10 and 253.105. We conclude the circuit court erred in granting summary and declaratory judgment to Plaintiffs, and we reverse and remand to the circuit court for an entry of judgment dismissing Plaintiffs' complaint in its entirety.

*By the Court.*—Order reversed and cause remanded with directions.

.¶ 21 NEUBAUER, C.J. (*dissenting*). Plaintiffs Planned Parenthood of Wisconsin and its medical director, Broekhuizen, (Planned Parenthood) seek a declaratory judgment to resolve two issues of statutory construction arising under Wis. Stat. §§ 253.105 and 253.10. The statutes impose certain requirements for the performance of abortions, including medication abortions, the violation of which can result in criminal prosecution and penalties, civil forfeitures, professional disciplinary actions, and civil liability. The Defendants are authorized to prosecute crimes or impose disciplinary actions under those statutes: the Wisconsin attorney general, the Dane county district attorney, as a representative of a class of all elected district attorneys in Wisconsin, and the members of the Wisconsin Medical Examining Board in their official capacity. The circuit court certified the class without objection.

¶ 22. The circuit court found that a justiciable claim arises under the declaratory judgment statute, Wis. Stat. § 806.04, because, among other reasons, Planned Parenthood's conduct is potentially sanctionable by criminal penalties or steep forfeitures and the Defendants have a duty to enforce the statute. I agree with the circuit court's analysis and would affirm.

## A. Medication Abortions

¶ 23. The first statute, Wis. Stat. § 253.105(2), addresses medication abortions, involving the oral administration of two separate drugs. Under Planned Parenthood's medical protocol, a physician prescribes

730

and is present when both drugs are dispensed to the patient during the patient's second appointment at the clinic.[1] The patient takes the first drug (Mifeprex) at the clinic and is directed to take the second drug (misoprostol) at home twenty-four hours later.

¶ 24. WISCONSIN STAT. § 253.105(2) provides that no person may give an abortion-inducing drug to a woman unless the physician who prescribed, or otherwise provided, the abortion-inducing drug is "physically present in the room when the drug is *given to the woman.*" Sec. 253.105(2)(b) (emphasis added). The criminal penalty provision exempts the "*woman to whom an abortion-inducing drug is given.*" Sec. 253.105(3) (emphasis added). A civil claim is available to a "*woman to whom an abortion-inducing drug was given*" in violation of subsec. 2. Sec. 253.105(4)1. (emphasis added).

¶ 25. The circuit court found that "given" was ambiguous, as it could mean, among many definitions, generally and as applicable here, dispensed or administered. The court found "given to the woman," could mean simply handed to her, i.e., dispensed, or administered to her, i.e., introduced into her body by ingestion or otherwise. I agree with the circuit court's conclusion that reasonable persons could disagree as to its meaning. *State ex rel. Kalal v. Circuit Court for Dane Cty.*, 2004 WI 58, ¶ 47, 271 Wis. 2d 633, 681 N.W.2d 110 (under well-established rules of statutory construction, a statute is ambiguous if reasonable persons could disagree as to its meaning).

---

[1] The physician already will have met once with the patient under WIS. STAT. §§ 253.105(2)(a) and 253.10(3)(c).

### 1. *Reasonable People Could Disagree with the Majority's Interpretation of "Given to the Woman."*

¶ 26. The majority finds that "given to the woman" definitively precludes an interpretation which could support prosecution under Planned Parenthood's protocol, and thus, Planned Parenthood failed to present a justiciable controversy and is not entitled to a declaratory judgment. This, despite the fact that *no party* has argued for the interpretation the majority apparently now concludes is the only possible one.

¶ 27. Indeed, the majority reaches out to construe the statute before denying jurisdiction despite the fact that the Defendants declined altogether to address the circuit court's statutory construction or Planned Parenthood's statutory arguments. While the Defendants proclaim that the statute is unambiguous, they provide no analysis. *Reiman Assocs., Inc. v. R/A Advert., Inc.,* 102 Wis. 2d 305, 306 n.1, 306 N.W.2d 292 (Ct. App. 1981) (issues that are not briefed or argued are deemed abandoned).

¶ 28. As explained below, the majority fails to apply well-established rules of statutory construction. The majority apparently finds that the statute is unambiguous, without saying so, and fails to point to any support for its conclusion. Reasonable people could disagree with the majority's statutory interpretation.

¶ 29. Finding that liability arises only if "given" means "administered," rather than "dispensed," the majority turns to a definition of "administered"—when the drug is "introduced into the woman's body by ingestion or other means." Majority, ¶ 13. The majority then reasons that, because the woman puts the

second drug in her own mouth, or "self-administers" the drug, others cannot be found to have administered it to her. *Id.*

¶ 30. The majority's analysis depends on the addition of "self" before "administered." But the word "self" is not found in the statute. *See Westra v. State Farm Mut. Auto. Ins. Co.*, 2013 WI App 93, ¶ 18, 349 Wis. 2d 409, 835 N.W.2d 280 ("Courts may not 'add words to a statute to give it a certain meaning.' ") (citation omitted). The statute does not say "self-given to the woman," or support an interpretation of "self-administered to the woman."

¶ 31. The statute regulates the actions of persons/physicians who give the drugs to the woman. The woman is not the person who gives the drugs "to the woman." She is the recipient. The majority's interpretation requires the deletion of "to the woman."

¶ 32. The penalty provision exempts the woman "to whom an abortion-inducing drug is given." Wis. Stat. § 253.105(3). It makes little sense to interpret the statute to exempt a woman "to whom" the drug "is given" by herself. A civil remedy is available to "the woman to whom the drug is given" in violation of § 253.105(2). It makes little sense to interpret the statute to provide a remedy to a woman who gives the drug to herself, who could not be found criminally liable because she is the one "to whom" she gave the drug. The majority's interpretation requires the deletion of "to whom."

¶ 33. The statutory structure and purpose make clear that the woman is given the drug *by others*. *See Kalal*, 271 Wis. 2d 633, ¶ 48 (scope, context and purpose ascertainable from the text and structure of the statute are relevant to plain-meaning statutory interpretation).

¶ 34. In addition, it is commonly understood that a physician gives a drug to a woman for her to take/ingest; she does not give a drug to herself. People don't "give" themselves food, drink, or medicine. It would not be grammatically correct to say that they do, nor would it be common usage. *See id.*, ¶ 45 (statutory language is given its common, ordinary, and accepted meaning).

¶ 35. In short, the statute can be reasonably interpreted to address the circumstances when the drug is given *by others* to the woman, not "given to the woman" by herself. WIS. STAT. § 253.105(2)(b).

¶ 36. Moreover, the majority's logic means that, because a woman "self-administers," others can never be found to have administered the drug to the woman. But a woman usually puts prescribed pills in her own mouth. She does so at the direction of the physician, who thus "administers" it to her, i.e., introduces it into her body by ingestion. However, under the majority's logic, a nurse or physician would never administer a drug to a patient whenever the patient ingests it. That defies common sense.

¶ 37. It is also inconsistent with the statutory definition of "administer" as it pertains to the handling of drugs. "Administer" is "the direct application of a . . . prescribed drug . . . whether by injection, ingestion or any other means, to the body of a patient" by (a) practitioners—persons licensed to prescribe and administer drugs or (b) by the patient at the direction of the practitioner. WIS. STAT. § 450.01(1)(a), (b). "Patient" means the person "to whom drug products . . . are dispensed or administered." Sec. 450.01(14). These regulations on handling of drugs repeatedly and consistently refer to those who are "authorized to dispense

or administer a drug *to a patient."* WIS. STAT. § 450.01(13r)(a)1., 2., 4., 5 . (emphasis added); *see also* WIS. STAT. § 450.11(1b)(e)1.

¶ 38. The statutory definitions applicable to handling prescription drugs are in accord with the common understanding of "administer": the practitioner administers the drug to the patient when he or she ingests it at his or her direction. Thus, if "given to the woman" means "administered to the woman," WIS. STAT. § 253.105(2)(b) could reasonably be construed to require the physician's presence when the woman ingests the drug at the direction of the physician.

¶ 39. Reasonable people could also dispute the majority's point that "give" must have the same meaning as "given," because the statute addresses the actions of two or more persons. *See Kalal*, 271 Wis. 2d 633, ¶ 49 ("Many words have multiple dictionary definitions; the applicable definition depends upon the context in which the word is used."). If the provision of the drug involved two people, one could reasonably argue that "give" could mean dispense as to, for example, a staff member or a nurse, and "given" could mean administered, as to the physician. Thus, the statute could still be construed to require the physician to be in the room when the woman ingests the drug. And, if only the physician provides the drug, the "give/given" would arguably have the same meaning— that he or she must be in the room when the drug is administered to the woman, i.e., introduced into her body by ingestion at the direction of the physician.

¶ 40. The majority's straw-man interpretation ruling out application of the alternative meaning for "given"—"administered"—to anyone other than the woman only underscores the statute's ambiguity.

## 2. The Defendants' Only Justiciability Argument Is Unavailing.

¶ 41. As noted above, the Defendants declare that the statute is unambiguous, but provide no analysis of the statutory language. They contend that the only "reasonable interpretation" is that Planned Parenthood complies with the statute when the drugs are dispensed to the woman in the physician's office.[2] They also contend that the second drug, misoprostol, is not an abortion-inducing drug, but they provide no facts, much less medical facts, or any analysis. *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (we may decline to consider arguments not fully developed or to review issues inadequately briefed).

¶ 42. Defendants seek to avoid an interpretation of the statute altogether with their justiciability challenge. Defendants contend that we need not interpret or construe the statute, because the parties' agreement on the meaning deprives Planned Parenthood of standing. The Defendants argue that the parties' stipulation

---

[2] The circuit court noted that the Defendants argued only that no reasonable person could interpret "given" to mean administered as opposed to dispensed. As the court noted, the only dictionary definition of "give" specifically in the medical context is "administered." *See Administer,* MERRIAM-WEBSTER'S ONLINE DICTIONARY, http://www.meriam-webster.com/dictionary/administer (providing medical definition of "administer" as "to give (as medicine) remedially, ). The Defendants also dismiss other statutes regulating the handling of prescription drugs which define both "administer" and "dispense." WIS. STAT. § 450.01(1), (7), (17). They reason that the legislature was aware of those definitions and instead chose "given." This argument misses the mark. It fails to negate ambiguity or provide guidance as to what the legislature meant when it chose "given"—dispense or administer, or both.

submitted to the federal district court renders this action nonjusticiable because there is no actual controversy between parties who are adverse. The Defendants repeat on appeal their assurances to the circuit court that they do not intend to enforce the statute in a manner contrary to the declaration Planned Parenthood seeks.

¶ 43. However, as the majority recognizes, the proposed judgment incorporating the stipulation was never entered by the federal district court, and the Defendants' "assurances" do not render this matter nonjusticiable, as "it is not at all clear that any, much less all, of them would be bound by these statements or the stipulation in the federal action." Majority, ¶ 18.

¶ 44. I agree that the Defendants have failed to establish either that the stipulation or their assurances bind them now or in the future—rendering this action nonjusticiable. The stipulation was not entered as a final judgment by the district court, and no class of the seventy-two Wisconsin district attorneys was certified. The district court did not decide justiciability. The district court declined to enter the stipulation on federal jurisdictional grounds—because there was no constitutional question presented.

¶ 45. The Defendants provide no authority for their suggestion that the stipulation or their assurances are binding on current or future district attorneys who were never part of that action. The Defendants provide no judicial estoppel or any other analysis as to the binding effect on those parties who did agree to the stipulation, much less their successors. They fail to address altogether how the stipulation or their assurances in any way insulates Planned Parenthood from a civil claim.

737

¶ 46. As the circuit court aptly concluded, fundamental to the American system of justice is the precept that ours is a "government of laws, and not of men." *See* J. ADAMS, 2 PAPERS OF JOHN ADAMS 314 (R. Taylor ed. 1977) (Novanglus Letter No. VII). "Court access to resolve legitimate issues of statutory construction does not turn upon the good faith of government officials." *Id.*

¶ 47. Thus, the Defendants' only justiciability argument is unavailing.

### 3 Planned Parenthood Presents a Justiciable Controversy under WIS. STAT. § 806.04.

¶ 48. Planned Parenthood is entitled under Wisconsin law to a declaratory judgment establishing the meaning of "given," which is ambiguous, and therefore, what conduct under WIS. STAT. § 253.105(2)(b) exposes them to criminal and civil liability.

¶ 49. A criminal statute is unconstitutionally vague if it fails to afford proper notice of the conduct it seeks to proscribe—to sufficiently warn what conduct comes within or near the proscribed area. *State v. Hahn*, 221 Wis. 2d 670, 677, 586 N.W.2d 5 (Ct. App. 1998). The statute must not be so unclear that persons of ordinary intelligence must necessarily guess as to its meaning and differ as to its application. *Id.* As discussed above, a reasonable person could disagree as to the meaning of "given."

¶ 50. WISCONSIN STAT. § 806.04(2) provides that "[a]ny person . . . whose rights, status or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status or other legal relations thereunder."

Section 806.04(12) provides: "This section is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and it is to be liberally construed and administered." As the statute makes clear, the "underlying philosophy of the Uniform Declaratory Judgments Act is to enable controversies of a justiciable nature to be brought before the courts for settlement and determination prior to the time that a wrong has been threatened or committed." *Olson v. Town of Cottage Grove*, 2008 WI 51, ¶ 28, 309 Wis. 2d 365, 379–80, 749 N.W.2d 211 (quoting *Lister v. Board of Regents of Univ. of Wis. Sys.*, 72 Wis. 2d 282, 307, 240 N.W.2d 610 (1976)). As the *Lister* court further explained, "The purpose is facilitated by authorizing a court to take jurisdiction at a point earlier in time than it would do under ordinary remedial rules and procedures. As such, the Act provides a remedy which is primarily anticipatory or preventative in nature." *Lister*, 72 Wis. 2d at 307 (footnote omitted).[3]

¶ 51. The majority recognizes that "Plaintiffs do not need to await actual legal action or even a clearly expressed threat of legal action against them in order

---

[3] A matter is justiciable if the following four factors are satisfied: (1) the matter is a controversy in which a claim of right is asserted against one who has an interest in contesting it; (2) the controversy is between persons whose interests are adverse; (3) the party seeking declaratory relief has a legal interest in the controversy, that is to say a legally protectible interest; and (4) the issue involved in the controversy is ripe for judicial determination. *See Olson v. Town of Cottage Grove*, 2008 WI 51, ¶ 29, 309 Wis. 2d 365, 749 N.W.2d 211. Standing, which is incorporated in the determination of justiciability, focuses on the party rather than the issues—whether the plaintiff has a stake in the outcome, and is not simply seeking to raise another's legal right.

to have standing for a declaratory judgment." Majority, ¶ 18 (citing *Doe v. Bolton*, 410 U.S. 179, 188 (1973)). As the U.S. Supreme Court explained in *Bolton*, which involved a pre-enforcement challenge to an abortion law:

> We conclude . . . that the physician-appellants, who are Georgia-licensed doctors consulted by pregnant women, also present a justiciable controversy and do have standing despite the fact that the record does not disclose that any one of them has been prosecuted, or threatened with prosecution, for violation of the State's abortion statutes. The physician is the one against whom these criminal statutes directly operate in the event he procures an abortion that does not meet the statutory exceptions and conditions. The physician-appellants, therefore, assert a sufficiently direct threat of personal detriment. They should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.

*Id.* Under *Bolton*, all that is required for justiciability and standing is that a criminal statute directly operates against the party seeking relief and the challenge is brought against those with a duty to enforce the statute. The test is objective, not subjective. *See also State ex rel. Lynch v. Conta*, 71 Wis. 2d 662, 674, 239 N.W.2d 313 (1976) ("Potential defendants may seek a construction of a statute or a test of its constitutional validity without subjecting themselves to forfeitures or prosecution."); *Borden Co. v. McDowell*, 8 Wis. 2d 246, 256, 99 N.W.2d 146 (1959) (statutory duties of enforcement, rather than stated intentions, define the defendants' interests under the justiciability analysis).

¶ 52. Here, as in *Bolton*, Planned Parenthood is the one against whom the criminal penalties directly operate in the event that it fails to meet the statutory

requirements. Any person who violates the statute is guilty of a Class I felony, punishable by prison, fines, court costs, and surcharges. The Defendants include those who are in a position to prosecute, as well as those state officials who enforce medical licensing standards. Planned Parenthood is also exposed to civil liability, including compensatory and punitive damages. Given the ambiguity of the statute, Planned Parenthood has asserted a sufficiently direct threat to be afforded a declaratory judgment that clarifies its obligations under the statute.

4. *Defendants Concede That the Circuit Court's Declaratory Judgment Correctly Construed "Given to the Woman" to Mean "Dispensed."*

¶ 53. The circuit court held that "given" is ambiguous and interpreted it to require the physician "to be physically present when the abortion inducing drugs are dispensed or handed over to the patient, not when the patient actually ingests the drugs." As noted above, Defendants do not develop any challenge to the circuit court's ambiguity finding and agree with the court's interpretation. *Reiman*, 102 Wis. 2d at 306 n.1 (issues that are not briefed or argued are deemed abandoned); *Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (arguments not refuted are generally deemed admitted). I would affirm the circuit court's thorough analysis which took into account the parties' positions, the legislative history and purposes, and constitutional considerations.[4]

---

[4] The court found that the undisputed medical evidence established that it is not medically necessary for a physician to be physically present when the pills are ingested by the

## B. Voluntary Consent

### 1. The Majority Raises Barriers to Declaratory Relief That Find No Support in Declaratory Judgment Jurisprudence.

¶ 54. The majority also denies standing to Planned Parenthood on its requested declaration that a physician could not be liable pursuant to WIS. STAT. § 253.10(3)(a) and (b) if he or she made a good faith determination that a woman's consent to an abortion performed or induced was voluntary, that is, "given freely and without coercion by any person." The majority does so because Planned Parenthood did not cease performing surgical abortions and no Planned Parenthood physician changed his or her abortion practices. The majority states that Planned Parenthood had to show facts of "genuine fear" or that its medical director subjectively believed that she may be subjected to detrimental effects. Majority, ¶¶ 16–19.

¶ 55. That Planned Parenthood and its physicians continued to serve their patients by providing surgical abortions is not grounds to deprive them of the requested declaratory relief. Neither the majority nor the Defendants point to any authority that a plaintiff must show that it stopped or changed its practices, potentially to wait years for the requested legal relief, in order to receive a declaratory judgment. To so hold

---

patient. "Indeed, under the alternative 'administered/ingested' interpretation, there are potential dangers to the woman" who must travel to an appointment "while the abortion is in progress," or if she misses the appointment. Thus, the court's interpretation aligned with one of the statute's purposes— protecting the life and health of the woman and avoided a potentially substantial burden on the woman's constitutional rights. WIS. STAT. § 253.10(1)(b)1.

defeats the very purpose of declaratory judgments. As the circuit court pointed out, if that were required, we would inappropriately deny relief to those who do not make changes, and suppress, by operation of law, conduct that may be lawful.

¶ 56. In addition, Planned Parenthood did cease performing medication abortions following the statutory changes.

¶ 57. The president of Planned Parenthood expressed concern over potential lawsuits from patients under the voluntary consent provision. Broekhuizen declared that the voluntary consent provision is "unclear." The medical director clearly articulated a concern with the voluntary consent provision, testifying:

> The main concern is around giving the medication and then even in our best and good faith effort to make sure that we screen for interpersonal violence and coercion, the world is imperfect and that if we, in our best faith efforts, still did that but then someone came forth, that we could still be liable.

Seizing on certain statements, but ignoring others, the majority appears to question the credibility of these stated concerns.

¶ 58. More to the point, Planned Parenthood is not looking to, or required to, change its practices—the medical director confirmed that its practices employ good faith conduct. The issue is whether the law will protect Planned Parenthood based on its *current practices*—whether the law will protect a physician who complied with the statutory procedure *and* exercised good faith in the determination that consent was voluntary, even where it turns out that the patient's consent was not voluntary. As the medical director testified in response to questions about the threat of

743

prosecution for violation of the voluntary consent provision, "the concern has always been of not wanting to violate a law." The risk of liability under an unclear statute is enough.

### 2. The Voluntary Consent Provision Has No Scienter Element.

¶ 59. The voluntary consent provision does not contain a mens rea, or scienter element. The physician who performs the surgical or medication abortion is charged with determining whether the consent is voluntary by speaking with the woman personally, and out of the presence of anyone other than those working with the physician. The physician must discern the woman's subjective state of mind—that she is acting freely and without coercion. Adherence to the statutory procedure for informed consent creates a rebuttable presumption that the patient's consent is informed. The statute specifically provides that "[t]here is no presumption that consent to an abortion is voluntary." WIS. STAT. § 253.10(3)(g).

¶ 60. As there is no rebuttable presumption or standard by which to assess the physician's determination, whether a good faith standard applies is clearly a question arising out of the statute. Notably, the majority does not argue otherwise, or even contend that the statute is unambiguous—only that the medical director said she personally did not feel threatened.[5]

_____

[5] Ignoring the role of the medical director as a representative of a party, the majority dismisses her testimony that "[a]fter the act came out, many physicians" (specifically five) "expressed concern about their liability in facing prosecution" for violation of the voluntary consent provision as hearsay. No party developed this argument. The majority fails to provide

¶ 61. Indeed, the parties both cite to *Karlin v. Foust*, 188 F.3d 446, 472–78 (7th Cir. 1999), in which the court applied a "best medical judgment" standard to a physician's informed consent responsibilities under a Wisconsin statute. That court found standing and afforded declaratory relief to physicians who provided abortion services and sought to determine their legal rights. Neither the Defendants nor the majority distinguish that directly applicable case.

¶ 62. The absence of a scienter element establishes a sufficiently detrimental effect—the potential for a claim arising from Planned Parenthood physicians' *current* practices to which there may not be a good faith standard. As Planned Parenthood alleged, the statute "appears to impose strict liability and civil forfeiture penalties on a physician who failed to correctly ascertain another person's subjective state of mind, regardless of the physician's good faith attempt to ascertain that the patient's consent was in fact voluntary." Violation of the voluntary consent provisions exposes physicians to forfeitures up to $10,000 and civil liability. WIS. STAT. § 253.10(5), (6). The majority does not deny that the specter of forfeitures and civil liability under the statute is real—only that Planned Parenthood has not sufficiently expressed concern.

¶ 63. Again, the majority recognizes that "Plaintiffs do not need to await actual legal action or even a clearly expressed threat of legal action against them in

any legal analysis. *See* WIS. STAT. § 908.03(3) (then-existing mental or emotional condition). In addition, that the medical director offered a relative opinion that the voluntary consent provision was not as unclear as the "given" provision does not amount to a concession that the statute is unambiguous or that Planned Parenthood is not entitled to resolve uncertainty.

order to have standing for a declaratory judgment." Majority, ¶ 18 (citing *Doe v. Bolton*, 410 U.S. at 188). As the Supreme Court made clear in *Bolton*, it is enough that Planned Parenthood and its physicians are the ones against whom the statute directly operates in the event an abortion is alleged to be involuntary. This is a sufficient direct threat of detriment. The statute undeniably affects Planned Parenthood's rights because the statute regulates its current conduct. The action is timely and ripe. The facts are sufficiently developed to allow conclusive adjudication —the request does not seek an advisory opinion or present either hypothetical facts or legal questions. The circuit court's declaratory judgment resolved the uncertainty. Planned Parenthood's current conduct is regulated and the Defendants are the enforcers— prosecutors and state officials who enforce medical licensing standards. Those are the relevant and compelling facts which clearly establish the risk of injury to Planned Parenthood and its physicians' interests. There need not be more. *Bolton*, 410 U.S. at 188; *Borden Co.*, 8 Wis. 2d at 256.

¶ 64. Our supreme court, in *Olson*, has emphasized that declaratory relief is appropriate wherever it will serve a useful purpose in clarifying rights. *Olson*, 309 Wis. 2d 365, ¶ 28. Declaratory judgments are available to "[a]ny person . . . whose rights, status or other legal relations are affected by a statute." WIS. STAT. § 806.04(2). Its purpose is to "settle and to afford relief from uncertainty and insecurity" and it is to be liberally construed and administered. Sec. 806.04(12). It is exactly this that Planned Parenthood seeks to have declared: the rights and legal relationships of the parties in respect to each other under the statutes and in the factual context of the case. Declaratory

judgments construing statutes are available precisely so that plaintiffs need not await the assertion of a complaint as the sole means of seeking relief when an ambiguous statute is directly applicable to ongoing practices.

### 3. The Defendants Concede That the Circuit Court's Declaratory Judgment Correctly Interpreted the Voluntary Consent Provisions as Encompassing Good Faith.

¶ 65. Again, the Defendants offer no challenge on appeal to the circuit court's determination that Wis. Stat. §§ 253.10(3)(b) and 253.10(5) are ambiguous, and they agree that the provisions do not impose strict liability for a physician's determination that a woman's consent is, in fact, voluntary. The court found that a physician fully complies with the statutes and is not subject to forfeitures and other liability where a physician makes a good-faith, i.e., objectively and subjectively reasonable, determination that a woman's consent is, in fact, voluntary. The court set forth a thorough and unchallenged analysis. For these reasons, I would also affirm the court's declaratory judgment. *See Reiman*, 102 Wis. 2d at 306 n.1 (issues that are not briefed or argued are deemed abandoned); *Charolais*, 90 Wis. 2d at 109 (arguments not refuted are generally deemed admitted).

¶ 66. For the above reasons, I would affirm.